

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOS. PD-0893-14 & PD-0894-14

### JOEY DARRELL FAUST, Appellant

**v.**

### THE STATE OF TEXAS

- - - - - - - - - - - -

### RAMON MARROQUIN, Appellant

**v.**

### THE STATE OF TEXAS

## ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW FROM THE SECOND COURT OF APPEALS TARRANT COUNTY

YEARY, J., filed a concurring opinion.

## CONCURRING OPINION

Police have a difficult enough job without the added burden of individual citizens physically interfering with them in the performance of their duties. According to the F.B.I. Uniform Crime Reporting Program publication entitled *Law Enforcement Officers Killed and Assaulted,* in the year 2014, 96 officers were killed in the line of duty (51 of those were

"feloniously killed," and 45 were "accidentally killed"), and 48,315 officers were assaulted while performing their duties. FED. BUREAU OF INVESTIGATION, 2014 LAW ENFORCEMENT OFFICERS KILLED & ASSAULTED (2014), https://www.fbi.gov/about-us/cjis/ucr/leoka/2014/ home. It is no surprise to find, therefore, that Texas has made it a crime to interfere with an officer who is performing his duty. TEX. PENAL CODE § 38.15(a)(1) (Interference with Public Duties).

Appellants in these cases have been charged with and convicted of doing exactly that: interfering with officers who were performing their duties. Appellants have complained on appeal, in turn, that it was not they who interfered with the officers, but the officers who were interfering with *them* in the exercise of their constitutional right to speech protected by the First Amendment to the United States Constitution. The court of appeals agreed and reversed their convictions—actually rendering judgments of acquittal. *Faust & Marroquin v. State*, Nos. 02-13-00222-CR & 02-13-00223, 2014 WL 2611186, at *4 (Tex. App.—Ft. Worth June 12, 2014) (mem. op., not designated for publication). We, then, granted the State's petitions for discretionary review to determine whether the court of appeals's decision was correct.[1]

---

[1] We granted the following grounds for review:

1.     Did the Second Court of Appeals err in implicitly holding that citizens can use the First Amendment to the United States Constitution as a shield to disobey lawful orders of law enforcement and forcibly cross a police skirmish line set up at a Gay Pride Parade in Fort Worth, Texas, when those measures by law enforcement are taken to preserve the peace and the safety of the public?

2.     Notwithstanding that police action may infringe on a citizen's First Amendment rights, does a citizen have a right to disobey the orders of a police officer, forcibly

My colleague, Judge Newell, raises an important question—one that I am frankly drawn to and which I believe may quite possibly be correct—that the court of appeals should never have reached the issue that was raised on appeal in this case. He concludes that Appellants never obtained an adverse ruling—a necessary systemic requirement to an appellant's right to bring up an issue on appeal—on the question addressed by the court of appeals. *See* TEX. R. APP. P. 33.1(a)(2). He concludes that Appellants obtained an adverse ruling only on their request for an acquittal, and based on my reading of the record, I think he might be correct. But I am not certain. And the issue is not one that is so easily decided that I am prepared to resolve it without requesting briefs from the parties. Moreover, that is not the issue upon which this Court granted review. Consequently, I believe the more prudent course for this Court now is to focus on and resolve the issues stated in the grounds for review which we agreed to address.

The majority opinion, as well as the dissent by Presiding Judge Keller, attempt to do just that. They each address the issues on which this Court granted review, albeit in different

---

breach a skirmish line, and interfere with the officer's duties?

3.    Did the Second Court of Appeals err in failing to conduct a proper "as applied" First Amendment analysis when it concluded that the Fort Worth Police Department's action in constructing a skirmish line at a Gay Pride Parade violated the First Amendment to the United States Constitution?

4.    Did the Second Court of Appeals err in concluding that the skirmish line set up by the police department during the Fort Worth Gay Pride Parade was not a reasonable action as to "time, place, or manner" under the First Amendment to the United States Constitution?

ways. The Majority and Presiding Judge Keller's opinions debate, as did the court of appeals, whether Appellants' First Amendment rights were violated. Presiding Judge Keller's opinion is concerned about the purpose of the police skirmish line and argues that it was formed to prevent Appellants from "express[ing] their views because their words are hateful." Dissenting Opinion of Presiding Judge Keller at 1. The Majority, also, is concerned with the constitutionality of the skirmish line, appearing to me to conclude that the legality of that police action should determine the outcome in these cases. Majority Opinion at 15-19. The Majority holds, nevertheless, "that the temporary skirmish line was a lawful means to effect the police purpose of preserving the peace. . . ." Majority Opinion at 19.[2]

But I see this case differently than both Presiding Judge Keller and the Majority. Correctly framed, the issue in this case, it seems to me, is *not* whether Appellants had a First

---

[2] The Majority seems to take it as a foregone conclusion that the Interfering with Public Duties statute itself imposes, as an element, a requirement of proof that the public duties being interfered with are being carried out by lawful and constitutional means. Majority Opinion at 11. The statute provides that the officer interfered with must be "performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE § 38.15(a)(1). It is not at all as clear to me, as it seems to be to Judge Newell, that the phrase "imposed or granted by law" modifies both "authority" and "duty" in the statute. Dissenting Opinion of Judge Newell at 3. Discerning whether the words "authority" and "duty" are both modified by the phrase "imposed or granted by law" is no simple grammatical endeavor. But even if both are modified by that phrase, it is beyond dispute that the officers in this case had a duty "imposed . . . by law" to preserve the peace at the parade. *See e.g.*, TEX. CODE CRIM. PROC. art. 2.13(a) ("It is the duty of every peace officer to preserve the peace within the officer's jurisdiction."). Indeed that is what gave them cause to be present when Appellants violated their skirmish line. But as Judge Newell also notices—and I agree with him about this—there is a proper distinction to be made between a duty imposed by law on an officer and the "means" the officer uses to effect that duty. *Id.* ("To effect this purpose [the duty to preserve the peace], the officer shall use all lawful *means*."). Given that understanding of the language of the statute, I do not believe the statute calls for an acquittal or dismissal, even when it is shown that the reason a person interfered with an officer was because the officer was first interfering with the person's constitutional rights.

Amendment right to speak out against the Gay Pride Parade, its organizers and participants, and its message. Of course they did. The issue in this case is also not whether the skirmish line established by the police had the incidental effect of delaying Appellants' access to a location from which, they claim, they wished to exercise their First Amendment rights. The issue, I believe, is whether Appellants were arrested and charged with a crime for exercising their First Amendment rights or whether they were arrested and charged with a crime for interfering with peace officers who were performing their duty.

Appellants were charged with the state criminal offense of interfering with the public duties of a peace officer. TEX. PENAL CODE § 38.15(a)(1) (Interference with Public Duties). That statute provides, in relevant part, that "[a] person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with: (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." *Id*. The charging instruments alleged that each defendant did then and there,

> WITH CRIMINAL NEGLIGENCE INTERRUPT, DISRUPT, IMPEDE OR INTERFERE WITH . . . A PEACE OFFICER, WHO WAS PERFORMING A LAWFUL DUTY, TO-WIT: CONTROLLING THE CROWD AND MAINTAINING THE PEACE AT A GAY PARADE . . . .[3]

The statute provides a defense to prosecution where "the interruption, disruption, impediment, or interference alleged consisted of speech only." TEX. PENAL CODE §

---

[3] The charging instrument in Faust's case alleged further that he committed the offense : "BY ATTEMPTING TO CROSS A STREET AFTER BEING ORDERED NOT TO CROSS SAID STREET . . . ." The charging instrument in Marroquin's case alleged further that he committed the offense: "BY ATTEMPTING TO CROSS A LINE OR ROW OF POLICE OFFICERS BY ATTEMPTING TO PUSH THROUGH SAID LINE OF POLICE OFFICERS . . . ."

38.15(a)(1).[4] But this case does not seem to me to turn on the question of the applicability of the "speech only" defense provided for in the statute. No one seems to be arguing that by "cross[ing] a street after being ordered not to cross said street . . ..", or by "attempting to cross a line or row of police officers by attempting to push through said line of police officers," Appellants engaged in conduct that consisted of "speech only." Instead, Appellants complain in this Court that the conduct of the officers in forming the skirmish line in the first instance violated their right to free speech guaranteed by the First Amendment. They seem to claim that they were privileged to disregard the authority of the police officers who were in their way on that day and in that location because their interest in communicating their message from the place that they wished to communicate it outweighed their duty to refrain from interfering with peace officers who were discharging their duty to keep the peace.

This Court has previously determined, in the context of a prosecution for resisting arrest, that "it is no defense to prosecution that the arrest or search was unlawful." *State v. Mayorga*, 901 S.W.2d 943, 945 (Tex. Crim. App. 1995). In that case, this Court adhered to its reasoning in previous cases in which we stated that "the use of self-help to prevent an unlawful arrest presents too great a threat to the safety of individuals and society to be sanctioned," and that "[t]he line between an illegal and legal arrest is too fine to be determined in a street confrontation; it is a question to be decided by the courts." *Id*. (quoting *Barnett v. State*, 615 S.W.2d 220, 223 (Tex. Crim. App. 1981)). I am drawn to the wisdom

---

[4] The United States Supreme Court has held that a similar ordinance, without such a defense, was unconstitutional. *City of Houston, Texas v. Hill*, 482 U.S. 451, 467 (1987).

and the logic of a rule prohibiting interference with officers even when citizens believe the officers are wrong. It seems to me that a citizen's dispute with an officer should ordinarily be settled in court, not on the street.

Interestingly, I have found no cases in which the United States Supreme Court has squarely considered whether a statute prohibiting resisting arrest or search is applied constitutionally when the officers' actions violate a citizen's constitutional rights. I am similarly unaware of any cases, by either this Court or the United States Supreme Court, that have squarely addressed that same issue in the context of a statute prohibiting interference with the public duties of an officer. But in my opinion, to say anything other than that interference with an officer (other than by speech only) is a crime regardless of whether the officer is violating a person's rights, except in very limited circumstances justifying the use of reasonable force for self-defense only, is to invite citizens to seek vindication of their rights on the streets against police officers who may reasonably believe, although they may be mistaken, that they are using lawful means to effect their duties. We should not invite that kind of street justice.

There is no question that a requirement of submission to police authority on the street might mean that, in some cases, a perfect vindication of a deprived right can never be had. Some might argue, for example, that if they lose the one opportunity that was available to them to protest at a particular parade, in a particular location, at a particular time of day, no amount of money damages—and even the firing of the peace officer who violated their

rights—can restore that lost opportunity. I am troubled by possible deprivations like that one. But the problem I see with authorizing individuals to seek their own street justice is that it comes at a terrible price—an increased risk of harm, both to the person seeking vindication of their rights and to others present who may attempt to come to the aid of either the citizen or the officer. If such a situation escalates, people can get hurt, or injured, or even killed, and the Constitution cannot defend the right of a dead person to speak. Such a person can only be heard then by the living in memory, or in books or other writings, or through other recorded media.

Even the United States Supreme Court has recognized that police are authorized to use physical coercion in order to effect their duties. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). That is certainly true in Texas. Our law authorizes officers to effect their duties using "all lawful means." TEX. CODE CRIM. PROC. art. 2.13(a). Our law explicitly authorizes the use of force by peace officers when they reasonably believe it is immediately necessary to make or assist in making an arrest or search or to prevent an escape after arrest, as long as they reasonably believe the arrest or search is lawful. TEX. PENAL CODE § 9.51(a). It also authorizes, in limited circumstances, the use by an officer of deadly force. TEX. PENAL CODE § 9.51(c).

I certainly do not want officers to violate the constitutional or statutory rights of our

citizens. Nevertheless, I am convinced that rights that are lost in community-based citizen/police encounters—between citizens who believe their rights are being violated and officers who reasonably believe the means they have chosen to effect their duties are lawful and constitutional—are outweighed by the danger of encouraging lawless disregard for an officer's authority on the street. While rights lost may never be vindicated fully in the sense that a right lost in a moment in time may never be restored, those rights can be somewhat imperfectly vindicated by subsequent court actions. It is better to encourage citizens to settle their disputes with police in a courtroom than to encourage them to settle them on the street, with the potential for violence—especially when the violence could be deadly.

Under my reading of the Interference with Public Duties of an Officer statute, a person is not authorized to interfere with an officer even if the person believes their rights are being violated by the officer—and this is so regardless of whether the person's assessment of the propriety of the officer's chosen means of effecting his duty might later be vindicated by a court. The statute simply prohibits interfering with an officer while the officer is performing his duties. The statute provides a defense if the interference consists of "speech only." TEX. PENAL CODE § 38.15(d). Interference beyond "speech only" is proscribed. Period. A dispute about the means an officer uses to carry out his duties "is a question to be settled by the courts." *Barnett*, 615 S.W.2d at 223.[5]

---

[5] That is not to say that a person has no right to resist an officer no matter what the circumstances. Certainly there is a limited right to self-defense against an officer "if before the actor offers any resistance, the peace officer [] uses or attempts to use more force than necessary to make the arrest or search; and [] when and to the degree the actor believes the force is immediately

The Majority and Presiding Judge Keller's opinions suggest that citizens have the right to interfere with peace officers if the citizens believe that their rights are being violated by the means chosen by the officers to effect their duties. Their opinions suggest that if the citizen's belief is one that would later be vindicated by the courts, the citizen is justified in interfering with the officer's performance of his duties. It is not hard to imagine that such interference might get someone harmed or even killed. That might hurt the citizens whose rights were violated by the police, and it might harm the officer too, who might only later learn that he has harmed a citizen physically when it was he, the officer, who provoked the citizen's interference due to a mistaken but reasonable belief that his conduct was justified.

I respectfully concur only in the judgment of the court.

FILED:       December 9, 2015
PUBLISH

---

necessary to protect himself against the peace officer's . . . use or attempted use of greater force than necessary." TEX. PENAL CODE § 9.31(c). Thankfully, that issue is not raised in this case.